IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No. 3:25-CR-300-KDB-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    *Plaintiff*,<br><br>v.<br><br>DECARLOS DEJUAN BROWN, JR.,<br><br>                    *Defendant*. | **RESPONSE IN OPPOSITION TO EMERGENCY MOTION FOR A PROTECTIVE ORDER** |

WSOC TELEVISION, LLC ("WSOC-TV"), as an interested third party subject to Defendant Brown's proposed protective order, makes a limited appearance to intervene and submit this brief opposing Defendant Brown's *Emergency Motion For A Protective Order*. (D.E. 47).

## FACTUAL BACKGROUND

In 2016, North Carolina passed legislation contained in the Public Records Act, N.C. Gen. Stat. § 132-1 et seq., instituting a procedure by which the public could seek access to law enforcement recordings, including body-worn and dashcam recordings. *See* N.C. Gen. Stat. § 132-1.4A. This procedure is independent from any criminal proceeding which may relate to the same law enforcement recordings and contains a litany of factors for a court to consider in determining whether such recordings are subject to release and on what conditions.

On October 24, 2025, WSOC-TV filed a Complaint for Release of Law Enforcement Agency Recording pursuant to N.C. Gen. Stat. § 132-1.4A(g) in the Superior Court of Mecklenburg County, North Carolina. (Exhibit A – Complaint.) A Petition for Release of Custodial Law Enforcement Agency Recording was filed in the proceeding on October 28, 2025. (Exhibit B – Petition.) The next day, the Superior Court issued a Notice of Hearing and ordered

the production of relevant recordings for in-camera review. (Exhibit C – Notice of Hearing; Exhibit D – Order for In-Camera Review.) On December 9, 2025, the redacted 911 recordings, which are independently subject to disclosure under the North Carolina Public Records Act, were produced to WSOC-TV.

On January 5, 2026, 73 days after the filing of the Complaint, the state court held a hearing on WSOC-TV's petition.[1] Defendant Brown's counsel in both the separately pending state and federal actions were in attendance and had an opportunity to be heard. (D.E. 47, pp. 2-3.) In total, six different attorneys attended the state court hearing on behalf of interested parties and were heard by the state court. Prior to the hearing, Defendant Brown's state defense counsel provided the state court with a written opposition to the petition (D.E. 47-1), which the judge acknowledged he had received and reviewed prior to the hearing. Defendant Brown's federal counsel, who were not admitted in the North Carolina state courts, still had an opportunity to speak to the state court and echoed state defense counsel. Defendant Brown's interests at the state court proceeding were represented by competent counsel.

At the conclusion of the hearing, the state court issued an oral order that all recordings would be released to WSOC-TV for review. The court ordered that the recordings were not allowed to be published or disseminated to third parties, but would be subject to further consideration upon a renewed petition. Pursuant to the state court's order, WSOC-TV could renew its petition after reviewing the recordings with a narrower scope for specific recordings.[2] The state court instructed

---

[1] Prior to WSOC-TV's hearing, the Court held a hearing to consider a petition filed by the family of Iryna Zarutska for the release of the same law enforcement recordings. It is WSOC-TV's understanding that the state court granted the release to the family but prohibited production to third parties.

[2] This is similar to a procedure recently ordered by the Superior Court of Mecklenburg County following a petition for law enforcement recordings in a separate and unrelated incident.

counsel for the Charlotte-Mecklenburg Police Department (who did not oppose release) to provide a written draft of its oral order.

After the proceeding, Defendant Brown's federal defense counsel did not file anything in the Superior Court action, but promptly filed the present motion , styled as one for a protective order. That same day, the Court granted a preliminary protective order subject to reconsideration after any responses are filed. (D.E. 48.)

Defendant Brown's motion, which seeks to enjoin the proceedings in the Superior Court, is improper and should be denied.

## ARGUMENT

### I. The Anti-Injunction Act Requires the Denial of this Motion.

Despite labeling his motion as seeking an emergency "protective order," Defendant Brown actually seeks a federal injunction. Defendant Brown asks this Court to prohibit Charlotte-Mecklenburg Police Department from producing law enforcement recordings to WSOC-TV to review in compliance with the state court's recent order. Further, Defendant Brown seeks to halt WSOC-TV's current civil lawsuit for the release of these recordings. *See* Exhibit A. This motion runs afoul of 28 U.S.C. § 2283, the Anti-Injunction Act, and must be denied.

"[A] federal court does not have inherent power to ignore the limitations of [28 U.S.C. § 2283] and to enjoin state court proceedings merely because those proceedings interfere with a protected federal right or invade an area preempted by federal law, even when the interference is unmistakably clear." *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 294 (1970). The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress,

or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

The Fourth Circuit has emphasized that federal courts must "construe [their] injunction power strictly by narrowly interpreting the Anti-Injunction Act" to limit " 'the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court.' " *HHC, a Virginia Gen. Partnership v. New York Ins. Co.*, 994 F.Supp. 717, 724 (E.D. Va. 1998) (citing *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 630–31 (1977)). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R. Co.*, 398 U.S. at 297. None of the narrow exceptions in which a federal court can grant an injunction to stay a state court proceeding apply here.

Enjoining WSOC-TV and the Charlotte-Mecklenburg Police Department from proceeding with the state court's mandate would strike at the sovereignty of the North Carolina court system. The parties were all present at the January 5, 2026 state court hearing and had an opportunity to be heard. The state court considered the arguments of all interested parties and evaluated the factors required under N.C. Gen. Stat. § 132-1.4A(g). At the conclusion of the hearing, the state court ordered the production of the videos to WSOC-TV, pursuant to certain restrictions. Defendant Brown now reasserts arguments – and briefing materials – presented to the state court in hopes of a different outcome. (*See* D.E. 47-1.) Notably, this second bite at the apple seeks to persuade the federal court without the other interested parties having an opportunity to be heard. If Defendant Brown takes issue with the state court's orders in the state court proceeding, his proper recourse is through the state court appellate system. *See, e.g.*, *State v. Chemuti*, 388 N.C. 412, 920 S.E.2d 810

(2025) (noting that a production order under N.C. Gen. Stat. § 132-1.4(A) is subject to immediate appeal).

## II. There Is No Risk of Serious Injury Requiring a Protective Order.

WSOC-TV is seeking the release of law enforcement recordings through a North Carolina state court proceeding pursuant to N.C. Gen. Stat. § 132-1.4A(g). This statute provides specific standards that the court shall consider when determining whether to order the release of all or a portion of a recording. Each of these enumerated standards were addressed and considered at the state court proceeding and will continue to be considered until the state court enters its final order. It is the standard set out in N.C. Gen. Stat. § 132-1.4A(g) that should properly govern whether WSOC-TV's state court petition is granted.

Defendant Brown proposes that this Court instead apply criminal discovery principles. He makes arguments regarding the admissibility of the recordings and the status of his criminal discovery. (D.E. 47, pp. 5-7.) However, Defendant Brown's approach is misguided because WSOC-TV has not sought discovery materials in this case. WSOC-TV is not a party to the criminal proceeding, and it does not seek the release of the law enforcement recordings through criminal discovery. Instead, WSOC-TV's petition seeks appropriate relief through an available statutory mechanism in a civil lawsuit. The fact that a record may also be exchanged in discovery in a separate proceeding does not take it out of this statutory scheme.

Should the Court decide to apply Defendant Brown's proposed framework, Defendant Brown has still failed to meet the burden of showing how disclosure of the videos to WSOC-TV "will result in a clearly defined specific, and serious injury." *United States v. Brittingham*, 20222 WL 3006849, at *1 (W.D. Va. July 28, 2022) (citing *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013)).

Throughout his motion, Defendant Brown broadly refers to an alleged irreparable harm to his rights to due process and a fair trial. However, Defendant fails to explain how the videos being provided to WSOC-TV alone to review, under restriction from being released to any other third party, would result in any perceived deprivations, even if the state court eventually orders release. *See generally Gray Media Group, Inc. v. Loveridge*, 155 F.4th 330, 338-41 (4th Cir. 2025) (setting forth law on access to court records and concluding that defendant failed to establish that unsealing of body camera video filed in connection with summary judgment infringed on her due process rights).

Further, these arguments that Defendant Brown seeks to assert in support of a protective order have already been considered by the state court. *See* N.C. Gen. Stat. § 132-1.4A(g)(6) (considering whether "Release would create a serious threat to the fair, impartial, and orderly administration of justice."); *State v. Chemuti*, 388 N.C. 412, 415 920 S.E.2d 810, 814 (2025) ("Although the superior court has discretion in selecting which portions of the requested recording, if any, should be released, our precedent requires the court to exercise that discretion consistent with the defendant's constitutional rights to due process and compulsory process."). WSOC-TV's review of the recordings, pursuant to the state court's restrictions, would not result in any irreparable harm to Defendant Brown's constitutional rights.

In its preliminary protective order, the Court also cited the protection of witnesses as an example of a potential compelling basis for a protective order. (D.E. 48, p. 2.) However, protecting the identity of witnesses was specifically considered and discussed at the state court hearing. It is within the state court's discretion to order redactions, blurring, or other alterations of released videos that it deems necessary to protect competing interests. After WSOC-TV receives and reviews the videos and identifies what specific videos that it has a continued interest in obtaining,

those videos can be modified to protect witnesses should the state court in its discretion so conclude. Such potential modifications were discussed at the state court hearing, and the fact that this Court is unaware of what transpired during that hearing further emphasizes the reason the federal court should abstain from the present motion. Additionally, at this stage of the state court proceeding, WSOC-TV's confidential review of the recordings to narrow the scope of its petition presents no risk to witness safety.

## **CONCLUSION**

For the reasons stated herein, the Court should deny Defendant's emergency motion for a protective order.

Respectfully submitted this the 6th day of January, 2026.

/s/ *Nicholas D. Acevedo*
Nicholas D. Acevedo
N.C. Bar No. 59228
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
nacevedo@ktslaw.com

*Counsel for WSOC Television, LLC*

**CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE**

In accordance with the Court's June 18, 2024, Standing Order, I hereby certify that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg.

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This is 6th day of January, 2026.

/s/ *Nicholas D. Acevedo*
Nicholas D. Acevedo
N.C. Bar No. 59228
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
nacevedo@ktslaw.com

*Counsel for WSOC Television, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

This is 6th day of January, 2026.

/s/ *Nicholas D. Acevedo*
Nicholas D. Acevedo
N.C. Bar No. 59228
KILPATRICK TOWNSEND & STOCKTON LLP
1001 West Fourth Street
Winston-Salem, NC 27101-2400
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
nacevedo@ktslaw.com

*Counsel for WSOC Television, LLC*