# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | DOCKET NO.: 3:25-cr-00300-KDB-DCK |
| ) | |
| v. ) | RESPONSE JOINING DEFENDANT'S |
| ) | EMERGENCY MOTION FOR A |
| DECARLOS DEJUAN BROWN, JR. ) | PROTECTIVE ORDER |
| ) | |
| ) | |
| ) | |

The United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, files this response joining Defendant's emergency motion for a protective order. This motion to prevent public disclosure of discovery prior to trial should be granted, particularly here where the Defendant is in federal custody and his federal case is expected to proceed to trial before any state charges. In support of its position, the United States further relies on the All Writs Act pursuant to Title 28, United States Code, Section 1651(a).

## I. Background

Brown is facing criminal charges in state and federal court in relation to an incident that occurred on August 22, 2025, where Brown stabbed I.Z. to death on the Lynx Blue Line light rail in Charlotte, North Carolina. The murder was captured on surveillance cameras inside the train. Media outlets obtained and published the footage of the murder to the public before federal charges were brought. Discussing and screenshotting the footage that the media published, individuals on social media attempted to identify witnesses. The Defendant had his initial appearance in federal court on December 11, 2025, and since then has been in federal custody. The federal prosecution is expected to proceed before the state's. Notably, Brown has not been arraigned because he has filed a motion for competency evaluation and has asked that the

arraignment be continued. As a result, the Standard Criminal Discovery Order, with its attendant protection of discovery materials, has not been issued by the Court.

On October 24, 2025, WSOC-TV filed a Complaint for Release of Law Enforcement Agency Recording pursuant to N.C. Gen. Stat. § 132-1.4A(g) in the Superior Court of Mecklenburg County, North Carolina. Doc. No. 52-1. On October 28, 2025, WSOC-TV filed a Petition for Release of Custodial Law Enforcement Agency Recording. Doc. No. 52-1.

The recordings include videos from body worn cameras of Charlotte Mecklenburg County ("CMPD") police officers who responded to the scene. The recordings involve CMPD officers interviewing witnesses, who provided their name and contact information.

On January 5, 2026, the state court held a hearing on WSOC-TV's petition. According to WSOC-TV, "[a]t the conclusion of the hearing, the state court issued an oral order that all recordings would be released to WSOC-TV for review." Doc. No. 52. at 2. WSOC-TV further reports that the order is subject to some restrictions, such as WSOC-TV is not allowed to publish or disseminate the recordings to third parties, unless further permitted by state court order. *Id.* There does not appear to be any restriction, however, in who out of WSOC-TV's 100+ employees will have access to the recordings or how WSOC-TV can disseminate the recordings within its organization.

Continuing on January 5, 2026, a short time after the state court issued its order, Brown moved for an emergency protective order preventing CMPD "from releasing or otherwise disclosing any audio or video related to this case to the media until further order of the Court." Doc. No. 47. Brown's motion cites Federal Rule of Criminal Procedure 16(d) in support of its request and alleges that the release of the recordings will allow the press "to report information directly related to this case but outside the confines of the courtroom." *Id.* at 6. Brown argues

2

Case 3:25-cr-00300-KDB-DCK    Document 53    Filed 01/08/26    Page 2 of 8

"the due process violations from inadmissible or prejudicial evidence being released to the public will put any future proceedings at risk." *Id.* at 7. Brown also contends release of the recordings may jeopardize the safety of individuals, including witnesses interviewed. *Id.* at 4. Because of these concerns, Brown seeks "a protective order preventing the Charlotte-Mecklenburg Police Department from releasing or otherwise disclosing any audio or video related to this case to the media until further order of the Court." *Id.* at 7.

Later that day, the federal Magistrate Court issued a Preliminary Protective Order. Doc. No. 48. The Magistrate Court relied on Rule 16(d), which states "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." *Id.* at 2. The Court noted that "the protection of witnesses is a compelling basis for a protective order . . . ." *Id.* at 2 (citing *United States v. Navarro*, 770 F. App'x 64, 65 (4th Cir. 2019) (per curiam)). The Court concluded that, "[b]ased on the harms Defendant forecast, the Court finds good cause exists to enter a preliminary protective order." *Id.* The Court noted that "[t]his is subject to reconsideration after any responses are filed." *Id.*

On January 6, 2026, WSOC-TV filed a response in objection to Brown's motion for a protective order, making only passing reference to the "federal action" against Brown. Doc. No. 52. Apparently overlooking the primacy of the pending federal indictment and prosecution against Brown, WSOC-TV characterizes Brown's motion as one seeking a federal injunction, subject to the Anti-Injunction Act ("AIA") in Title 28, United States Code, Section 2283. *Id.* at 3. Citing caselaw, WSOC-TV argues that the AIA should be narrowly interpreted and that none of its three narrow exceptions applies in this case. *Id.* at 3-4. WSOC-TV further argues that there is no risk of serious injury that requires a protective order from this court because the state court is managing any potential risk. *Id.*

On January 7, 2026, this Court ordered the United States to file a response by January 8, 2026, at 12:00 p.m. This response follows.

## II. Analysis

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "Use of the All Writs Act, however, is constrained by the Anti–Injunction Act ["AIA"], 28 U.S.C.A. § 2283], which provides that '[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or *where necessary in aid of its jurisdiction, or to protect or effectuate its judgments*.'" *Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231, 236 (4th Cir. 2007) (emphasis added).

Importantly, the AIA "does not bar the United States from seeking a stay of state court proceedings." *Trump v. Vance*, 941 F.3d 631, 638 (2d Cir. 2019) (citing *Leiter Minerals, Inc. v. United States*, 352 U.S. 220 (1957)); *see also In re Grand Jury Subpoena*, 866 F.3d 231, 233 (5th Cir. 2017) ("Although federal courts are generally prohibited from granting injunctions to stay state court proceedings under the Anti-Injunction Act, 28 U.S.C. § 2283, that general prohibition does not apply when the United States seeks the injunction, as it does here.") (citations omitted); *Mitchum v. Foster*, 407 U.S. 225, 235–36 (1972) ("Still a third exception [to the AIA], more recently developed permits a federal injunction of state court proceedings when the plaintiff in the federal court is the United States itself, or a federal agency asserting 'superior federal interests.'"); *NLRB v. Nash-Finch Co.*, 404 U.S. 138, 145-47 (1971) (reiterating the holding in *Leiter* and extending this exception to federal agencies); *United States v. Lemaire*, 826 F.2d 387, 388 n.2 (5th Cir. 1987) ("The [Anti-Injunction] Act does not prevent the United States, or one of its agencies, from acting to protect a federal interest."); 17A Charles Alan Wright,

4

Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 4222 (3d ed.) ("The Anti-Injunction Act does not apply at all when it is the United States that seeks to stay proceedings in a state court.").

In *Leiter Minerals*, the Supreme Court explained that, while the AIA is "designed to prevent conflict between federal and state courts," "[t]his policy is much more compelling when it is the litigation of private parties which threatens to draw the two judicial systems into conflict than when it is the United States which seeks a stay to prevent threatened irreparable injury to a national interest." 352 U.S. at 225-26. The Court further explained, "[t]he frustration of superior federal interests that would ensue from precluding the Federal Government from obtaining a stay of state court proceedings except under the severe restrictions of 28 U.S.C. § 2283 would be so great that we cannot reasonably impute such a purpose to Congress from the general language of 28 U.S.C. § 2283 alone." *Id.* at 226; *see also Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1201 (7th Cir. 1996) (quoting *Atlantic Coast R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970)) (cleaned up) ("[T]he Supreme Court teaches . . . that an injunction may be issued where 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'").

Applying *Leiter Minerals* and its progeny, the Second Circuit affirmed an order to enjoin a New York State civil action that a criminal defendant filed against two people who were potential witnesses in the defendant's criminal proceeding. *United States v. Gerace*, No. 21-2419, 2023 WL 3243477, at *1 (2d Cir. May 4, 2023). The Court held that "the district court did not abuse its discretion in granting the *ex parte* application for an injunction because the Anti-Injunction Act, 28 U.S.C. § 2283, does not bar the United States from seeking a stay of state

court proceedings and because the district court properly applied a balancing test that weighed potential prejudices." *Id.* "The district court considered on the one hand the government's interest in protecting witnesses from threats and intimidation, preserving grand jury secrecy, and enforcing the federal criminal discovery rules, and on the other, Gerace's interest in obtaining an injunction on the state defendants' speech." *Id.* at *2.

The federal government's interests in prosecuting this case – and this Court's jurisdiction and authority "to issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of its orders," *Winkler*, 101 F.3d at 1201 (quoting *United States v. New York Telephone*, 434 U.S. 159, 173 (1977)) – is beyond question.[1]

The government shares some of Brown's stated concerns, in particular with regard to witness safety.[2] The investigation has revealed that individuals in social media have already tried to identify some of the witnesses in the video footage that depicts the murder. That footage was released by the media, and any additional materials that identify witnesses risks their safety and the integrity of this federal prosecution. The risks inherent with the widespread dissemination of

---

[1] The statute allegedly violated in this case, 18 U.S.C. § 1992, is law because of the need and desire to prevent "Terrorist attacks and other violence against railroad carriers and against mass transportation systems on land, on the water, or through the air." Such a noble purpose is uniquely within the purview of the federal government. Count One of the Indictment, Doc. No. 10, alleges that "any of the conduct required for this offense was engaged in, on, against, and affecting a mass transportation provider and railroad carrier engaged in interstate and foreign commerce, to wit, the Charlotte Area Transit System," thus illustrating the federal government's comprehensive and separate responsibility to protect systems of transportation beyond localized systems. As final demonstration of the serious federal interest in combatting behavior such as that demonstrated so wantonly by Brown, Congress authorized punishment up to and including the death penalty.

[2] These concerns, however, do not extend to allowing access of these materials to the victim's family, subject to protective order against third-party release, and the United States does not oppose the family being provided access to these records. Moreover, the United States believes a protective order directed at all discovery in this case – beyond the body worn camera footage at issue in Brown's motion – is appropriate to prevent disclosure to the public, with the victim's family excepted.

such investigative materials are self-evident. Indeed, the Standard Criminal Discovery Order addresses these risks by proscribing the defendant's use of the material "for any purpose other than in direct relationship to the case" and providing that "no further disclosure shall be made of these items."

For the reasons stated above, the United States joins Brown's motion for a protective order.

Respectfully submitted January 8, 2026.

**RUSS FERGUSON**
**UNITED STATES ATTORNEY**

*s/ Edward Ryan*
Edward R. Ryan, NJ Bar # 029931986
Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
E-mail: Ed.Ryan@usdoj.gov


*s/ Daniel Cervantes*
Assistant United States Attorney
FL Bar Number: 40836
Attorney for the United States
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: 704.338.3115
Fax: 704.227.0197
E-mail: daniel.cervantes@usdoj.gov

# **CERTIFICATION**

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Certified on January 8, 2026.

                                           */s/ Daniel Cervantes*
                                           Assistant United States Attorney