# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CRIMINAL ACTION NO. 3:25-CR-00300-KDB-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| DECARLOS DEJUAN BROWN JR., | |
| Defendant. | |

Defendant Decarlos Dejuan Brown, Jr. has been criminally charged in state and federal court after an August 22, 2025, incident—captured by surveillance cameras—in which he allegedly fatally stabbed Iryna Zarutska aboard the Lynx Blue Line light rail in Charlotte, North Carolina. Now before the Court are Brown's Emergency Motions for Protective Order (Doc. No. 47), which seek to prevent the release of 911 recordings, Body Worn Camera ("BWC") footage of Officers involved in responding to the incident , and other discovery information (collectively "the Materials") to WSOC-TV, a Charlotte media station, and to Modify [the Preliminary] Protective Order (Doc. No. 55) so that Ms. Zarutska's family's attorney may obtain the BWC footage with restrictions.

At the outset, the Court emphasizes that Brown's Federal and North Carolina prosecutions are separate and independent. Each court has the obligation to conduct its proceedings in accordance with the relevant governing law. Therefore, the rulings of this Court do not address the merits of any rulings made by the state court (for which this Court has the highest respect) nor should any view of such rulings be inferred. Specifically here, this Court has an independent obligation to determine whether the Materials should be subject to a protective order under Federal

1

Rule of Criminal Procedure 16(d) in the context of Brown's federal charges. The state court's ruling, under a specific North Carolina statute, regarding a limited release of the 911 calls and BWC footage to WSOC-TV only relates to the state proceedings; it does not control or affect the federal action. Accordingly, WSOC-TV's characterization of Brown's motion as a "second bite at the apple," Doc. No. 52 at 4, is misplaced.

Rule 16(d) establishes that the Court "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief" by entering a protective order. Fed. R. Crim. P. 16(d)(1). The party seeking such relief bears the burden of establishing good cause, and the Court's assessment may properly include considerations such as "the safety of witnesses and others," and the "particular danger of perjury or witness intimidation." *United States v. Johnson*, 314 F. Supp. 3d 248, 251 (D.D.C. 2018) (quoting *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015)). Ordinarily, "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id.* (quoting *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007)). Indeed, to show "good cause" a party must demonstrate that "disclosure of certain information will result in a clearly defined, specific, and serious injury." *United States v. Gray*, No. 7:22-CR-00001, 2022 WL 822173, at *2 (W.D. Va. Mar. 18, 2022) (quoting *United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013)).

Once good cause is established, however, Rule 16(d) affords the district court substantial discretion to craft an order tailored to the circumstances. *Id. See United States v. Roberts*, 793 F.2d 580, 587 (4th Cir. 1986), *vacated on other grounds*, 811 F.2d 257 (4th Cir. 1987) (recognizing that Rule 16(d) empowers courts to "limit," "condition," or "absolutely prohibit" disclosure of discovery materials in criminal cases when necessary to protect witness security).

Brown asserts that public release of the materials will prejudice his constitutional rights to due process and a fair trial, particularly in light of the case's death penalty-eligible posture and the extensive media coverage it has already generated. Doc. No. 47 at 1. Brown further asserts that disclosure of the materials could endanger key witnesses and others depicted in the recordings—either physically or reputationally—and notes that members of his family, the mayor, and others have already received death and other threats related to this matter. Doc. No. 47-1 at 4–5. The Government likewise expresses concern for witness safety and for preserving the integrity of the federal prosecution. Doc. No. 53 at 6.

The Court has carefully considered these motions, briefs, and supporting exhibits. For the reasons articulated by both Brown and the Government, the Court finds that good cause exists to enter a Rule 16(d) protective order prohibiting the release of the Materials[1] from the August 22, 2025, incident. Therefore, the Court will grant Brown's Motion for Protective Order as to WSOC-TV, and any other individual or entity other than counsel for the government and Brown (and those individuals working with counsel), and as further described below. The Court will also grant Brown's Motion to Modify Protective Order as requested and permit the disclosure of the BWC to Ms. Zarutska's family's attorney Lauren Newton, subject to the restriction that the footage (and description and accounts from the BWC) not be disseminated outside her law firm absent further order of the Court.

---

[1] Specifically, WSOC-TV seeks the release of "any and all law enforcement recordings relating to the incident described herein. Such release should include all body camera recordings, dashboard camera recordings, cell phone recordings, surveillance recordings from the CMPD "Real Time Crime" cameras, or any other recordings in the possession, custody, or control of the CMPD's Office." Doc. No. 52-1 at 3.

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Emergency Motion for Protective Order (Doc. No. 47) and Motion to Modify Protective Order (Doc. No. 55) are **GRANTED**; and

2. Pursuant to Fed. R. Crim. P. 16(d)(1), the release of any and all law enforcement and "911" emergency recordings relating to the August 22, 2025 events that are the subject of the indictment, including all body camera recordings, dashboard camera recordings, cell phone recordings, surveillance recordings from the CMPD "Real Time Crime" cameras, or any other recordings in the possession, custody, or control of the CMPD's Office or other governmental agencies is prohibited without prior authorization from the Court.

**SO ORDERED.**
Signed: January 9, 2026

Kenneth D. Bell
United States District Judge