**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **DOCKET NO.: 3:25-cr-00300-KDB-DCK** |
| | ) | |
| **v.** | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF COMPETENCY** |
| **DECARLOS DEJUAN BROWN, JR.** | ) | **HEARING** |
| | ) | |
| | ) | |

The United States of America, by and through Russ Ferguson, United States Attorney for the Western District of North Carolina, files this memorandum of law in support of the competency hearing to be set by the Court.

## I.      Introduction

The United States respectfully submits this Memorandum of Law in support of the Court's previously ordered competency hearing, ECF No. 57, to assist the Court should it find Defendant incompetent to proceed at this time.  Importantly, such a finding does not end the case; a finding of incompetence to proceed is simply a snapshot, meaning *at this time* the defendant cannot understand the nature and consequences of the proceedings against him or assist properly in his defense.  If the Court makes this determination, the governing statute *requires* the Court to order competency restoration, which may include medication to assist Defendant in restoring his competency. In Defendant's case, the Bureau of Prisons ("BOP") has concluded that Defendant's prognosis to become competent to proceed is good with restoration and treatment.

The chief interest of the United States is the just resolution of this case as expeditiously as possible.  This Memorandum of Law is background for the Court so that, in the event of an

incompetence finding, competence can be restored and this matter set for trial without unreasonable delay.

## II. Background

On August 22, 2025, Defendant stabbed Iryna Zarutska to death on the Lynx Blue Line light rail in Charlotte, North Carolina. Defendant was immediately detained and transported to the hospital, where he received treatment for an injury to his hand that he sustained during the stabbing. On August 28, 2025, Defendant was released from the hospital and arrested on state murder charges.

On October 22, 2025, a federal Grand Jury in Charlotte, North Carolina, returned an indictment charging Defendant with one count of Violence Against a Railroad Carrier and Mass Transportation System Resulting in Death, in violation of Title 18, United States Code, Section 1992(a)(7), (b)(1), & (c)(1). ECF No. 10. On December 11, 2025, Defendant made his initial appearance in federal court. Since then, he has been and remains in federal custody.

On December 10, 2025, the night before Defendant's initial appearance in federal court, defense counsel filed a series of motions, including a motion for a competency evaluation and hearing. ECF No. 24. On January 14, 2026, the Court ordered a competency evaluation of Defendant pursuant to 18 U.S.C. § 4247(b). ECF No. 57.

## III. The Competency Evaluation Process

Defendant was transported to the Metropolitan Correctional Center in Chicago for evaluation pursuant to the Court's Order. He was evaluated primarily by a professional at the BOP who is a Licensed Clinical Psychologist and Board Certified in Forensic Psychology (hereinafter, "the Evaluator"). Additionally, Defendant was observed by medical, correctional and other mental health staff during his time in MCC Chicago. Their observations and

comments were considered by the Evaluator in reaching conclusions as to competency. The Evaluator also reviewed numerous records concerning Defendant and his background, including legal documents filed in the case at bar, medical records from the Bureau of Prisons and private health care providers who had had contact with Defendant, and law enforcement materials from local, state, and federal agencies. The Evaluator interviewed persons with relevant knowledge of Defendant's mental status. The Evaluator reviewed audio and video recordings of Defendant. Finally, the Evaluator spent hours directly in the presence of Defendant spread out over several occasions, during which the Evaluator spoke with him about matters that reflected on his mental competency.

On April 14, 2026, following this exhaustive evaluation, the Evaluator concluded that although Defendant Brown is not competent to stand trial at this time, his prognosis to be restored to competency is good through treatment with medication.

IV.     Memorandum of Law

Once the BOP has produced a report evaluating the defendant's competency, as it has in this case, the next step is for the Court to hold a hearing to make a determination on the defendant's competency. At the hearing, the Court must determine "by a preponderance of the evidence [whether] the defendant is *presently* suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d) (emphasis added). The Court may consider the BOP's competency report as evidence in making its determination on the defendant's competency. *See id.*; 18 U.S.C. § 4247(b)–(c).

If the Court determines Defendant to be presently incompetent, he is not released, and the case does not end. Rather, if the Court determines by a preponderance of the evidence that

Brown is presently incompetent at the hearing, "the court *shall* commit the defendant to the custody of the Attorney General" and the "Attorney General *shall* hospitalize the defendant for treatment in a suitable facility." 18 U.S.C. § 4241(d) (emphasis added). An order requiring treatment for restoration of competency is mandatory and not discretionary. *See United States v. Brennan*, 928 F.3d 210, 214 (2d Cir. 2019) ("[T]he statute calls for the district court to determine present competency and *mandates* commitment for further assessment if the defendant is presently incompetent.") (emphasis added); *United States v. Shawar*, 865 F.2d 856, 860 (7th Cir. 1989) ("[O]nce a defendant is found incompetent to stand trial, a district judge has no discretion in whether or not to commit him.").

If the Court were to find Brown incompetent to proceed at this moment, Brown would be moved to a specialized BOP facility that provides medical treatment to restore his competency. Once availability at the specialized BOP facility is confirmed and Brown is securely transported to the facility, he would undergo medical treatment for a period of time not to exceed four months: "The Attorney General shall hospitalize the defendant for treatment in a suitable facility—for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1). While receiving treatment at the BOP facility, Brown may be provided medication to restore his competency, including forced medication if necessary, consistent with constitutional safeguards. *See, e.g.*, *Sell v. United States*, 539 U.S. 166, 179 (2003) ("[T]he Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the

4

fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests.").

At the end of the restoration period, the Court must hold another hearing to determine whether the case may proceed because Brown's competency has been restored. "If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings." 18 USC 4241(e). *United States v. Davis*, 801 F. App'x 80, 85 (4th Cir. 2020) ("[T]he legal test for competency is whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him.'").[1] If Brown's competency is restored, the Court may set this case for trial and Brown remains charged with an offense that carries up to life in prison or death in this federal case and in federal custody pending his trial.

Importantly, and to avoid any confusion, competency to stand trial is a completely separate legal doctrine from an insanity defense. One is not relevant to the other. Once Brown is competent to stand trial, he may assert any defense available to him—including insanity if supported by the facts—or he may choose not to mount a defense at all. 18 U.S.C. § 4241(e) ("A finding by the court that the defendant is mentally competent to stand trial shall not prejudice the

---

[1] At this hearing, the Court can also order Brown to undergo continued treatment to restore his competency, should there be a "substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(2)(A).

5

defendant in raising the issue of his insanity as a defense to the offense charged . . . .").[2] The

insanity defense is a high bar.  The burden would be on Brown to prove by "clear and convincing

evidence" that at the time of the crime "the defendant, as a result of a severe mental disease or

defect, was unable to appreciate the nature and quality or the wrongfulness of his acts." 18

U.S.C. § 17. A mental health disease or defect, without more, is not enough. *See id.* ("Mental

disease or defect does not otherwise constitute a defense."). That has no relevance to competency

to proceed.

The competency standard is based on the lower "preponderance of the evidence"

standard, which is easier for the defendant to establish than the insanity standard, and requires

that the defendant have a greater level of understanding and participation in his defense, i.e. the

ability to "understand the nature and consequences of the proceedings against him and to assist

properly in his defense." In other words, a defendant can be found incompetent, restored to

competency, and found guilty at trial despite raising an insanity defense. *See*, *e.g.*, *Justus v.

Clarke*, 78 F.4th 97, 102 (4th Cir. 2023) ("Following his arrest for the murders of his ex-wife and

her boyfriend, Justus was twice found incompetent to stand trial, and was twice admitted to

Central State Hospital for treatment to restore his competency," after which he proceeded to a

bench trial and was found guilty despite raising an insanity defense.).

Even if the Court were to eventually find that there is no probability that Brown's

competency could be restored, he would not be released; he would be subject to civil

commitment proceedings. "If, at the end of the time period specified, it is determined that the

---

[2]     Were Defendant to assert an insanity defense, he would need to provide adequate notice
pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure.  On the Government's motion,
the Court would then order a separate examination regarding the existence of insanity at the time
of the offense (as opposed to competency at the time of trial).  *See* 18 U.S.C. § 4242(a).  None of
these steps have occurred at this point.

defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 . . . ." 18 U.S.C § 4241(d). Section 4246 requires civil commitment if Brown "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." Given Brown's brutal murder of the victim on the train, among other evidence, the United States maintains that the standard in section 4246 would be met. Moreover, if Brown were restored to competency, but mounted a successful insanity defense—which, again, is a high bar—the United States could still seek his civil commitment at the conclusion of his trial. *see* 18 U.S.C. § 4241(d).

## V.    Conclusion

At Brown's competency hearing, the Government will be prepared to discuss this legal framework.

Respectfully submitted May 7, 2026.

**RUSS FERGUSON**
**UNITED STATES ATTORNEY**

 *s/ Edward Ryan*
Edward R. Ryan, NJ Bar # 029931986
Assistant United States Attorney
United States Attorney's Office
Western District of North Carolina
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202
Telephone: (704) 344-6222
E-mail: Ed.Ryan@usdoj.gov

*s/ Daniel Cervantes*
Assistant United States Attorney
FL Bar Number: 40836
Attorney for the United States
United States Attorney's Office
227 West Trade Street, Suite 1650
Charlotte, North Carolina 28202

7

Telephone: 704.338.3115
Fax: 704.227.0197
E-mail: daniel.cervantes@usdoj.gov

8

## **CERTIFICATION**

Pursuant to the Standing Order of this Court entered June 18, 2024, and published to the Bar of the Western District on June 27, 2024, the undersigned hereby certifies:

1.	No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2.	Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

Certified on May 7, 2026.


	 */s/ Daniel Cervantes*	
	Assistant United States Attorney

9